1  Brian A. Osborne, Esq., CSB No. 126963
   OSBORNE LAW FIRM
2  674 County Square Drive, Suite 310
   Ventura, CA 93003
3  Ph: (805) 642-9283
   Fax (805) 642-7054
4

5

6  Attorneys for Plaintiff Guadalupe Raya, Individually And As Successor In Interest

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| Guadalupe Raya, individually and as Successor in Interest,<br><br>Plaintiff,<br><br>vs.<br><br>County Of Ventura, Ventura County Sheriff Geoff Dean, California Forensic Medical Group, Incorporated, Geronimo Solorzano, and Does 1 through 100, inclusive,<br><br>Defendants. | Case No.: **2:15-cv-07673-CBM(JCx)**<br><br>**FIRST AMENDED  COMPLAINT FOR DAMAGES:**<br><br>**(1) 42 U.S.C. § 1983 - Violation of Civil Rights**<br>**(2) Wrongful Death [C.C.P. §§377.60; 377.20]**<br>**(3) Americans With Disabilities Act Violation**<br>**(5) California Government Code § 845.6**<br>**(5) Negligence**<br>**(6) Medical Malpractice**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Guadalupe Raya, Individually and as Successor In Interest,  alleges as follows:

## I.

## JURISDICTION

1. Jurisdiction over the claims asserted herein is based upon federal subject matter jurisdiction [42 U.S.C. § 1983] pursuant to 28 U.S.C. §§ 1331 and 1343(3).

## II.

## VENUE

2. Venue in the United States District Court, Central District of California, is based upon 28 U.S.C. § 1391(a) (2) in that a substantial part of the events giving rise to the claims occurred in this district.

## III.

## PARTIES

A. Plaintiff.

3. Plaintiff Guadalupe Raya ("Raya") is now, and at all times herein mentioned was, an individual residing in the City of Oxnard, County of Ventura, State of California. Raya is the natural mother of decedent Edgar Solorzano and is his sole successor in interest.

B. Defendants.

4. Defendant County of Ventura ("Ventura County") is now, and at all times herein mentioned was, a governmental entity duly organized and existing under the laws of the State of California and which oversees, owns, operates, manages, directs and controls defendant Ventura County Sheriff's Department ("VCSD"), an agency of Ventura County.

1    5. Defendant Ventura County Sheriff Geoff Dean ("Sheriff Dean") is now, and at

2    all times herein mentioned was, the Sheriff of Ventura County and was responsible for

3    the management, supervision, control and policy making at Ventura County Jail ("VCJ")

4    and for the supervision and training of  peace officers employed by VCSD. Sheriff Dean

5    is responsible for the care, custody, control and safekeeping of inmates in his custody.

6    California Government Codes §§ 26605, 26610; California Penal Code § 4006. Sheriff

7    Dean is responsible for: (1) the management and control of Ventura County Jail; (2) the

8    selection, promotion, supervision, training, discipline and retention of agents and

9    employees working for VCJ, including custodial staff, counselors, advisors, nurses,

10   doctors, physician assistants, medical staff, mental health staff, education staff and

11   supervisors; and (3) the implementation of policies and procedures at VCJ.

12

13   6. Defendant California Forensic Medical Group, Incorporated ("CFMG") is now,

14   and at all times herein mentioned was, a California corporation providing medical

15   services and staff to Ventura County, VCSD and VCJ.

16

17   7. Defendant Geronimo Solorzano is now, and at all times herein mention was, a

18   resident of the City of Oxnard, County of Ventura, State of California. Geronimo

19   Solorzano is the natural father of decedent Edgar Solorzano and is named pursuant to

20   C.C.P.§ 382. Geronimo Solorzano abandoned Edgar Solorzano before age nine, had

21   no contact with Edgar Solorzano since that time, and is not entitled to damages herein.

22

23    8. The true names and capacities, whether individual, corporate, associate, or

24   otherwise, of Defendants sued herein as Does 1 through 100, inclusive, are unknown to

25   Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will

26   amend this complaint to show such true names and capacities when she has

27   ascertained the same.  Plaintiff is informed, believes and thereupon alleges that each

28

Doe Defendant named herein is, in some manner, legally responsible for the acts complained of. Does 1 through 25 are VCSD and/or VCJ employees and staff. Does 26 through 50 are VCSD and/or VCJ executive, management, and/or policy making staff and employees. Does 51 through 75 are CFMG medical doctors and/or mental health professionals. Does 76 through 100 are CFMG nurses, psych nurses, and/or employees and staff.

9. At all times herein mentioned Defendants, and each of them, were the agents, servants and employees of each of the Co - Defendants, and in doing the things herein mentioned were acting within the purpose, course and scope of their authorities and employment as such agents, servants and employees, and with the permission and consent of said Co- Defendants.

10. Plaintiff filed a governmental tort claim for money damages with Ventura County as required by the controlling sections of the California Government Code. The claim was rejected on July 23, 2015 and this complaint is timely filed.

11. The acts and omissions of all defendants were engaged in maliciously, callously, oppressively, wantonly, and with deliberate indifference to the rights of decedent Solorzano.

## II.

## STATEMENT OF FACTS

12. Edgar Solorzano was born on October 6, 1983. Mr. Solorzano was 31 years old at the time of his suicide while incarcerated in the Ventura County Jail. Mr. Solorzano had a prior suicide attempt while in custody at the Ventura County Jail in or

about 2007.

13. Mr. Solorzano was originally arrested for allegedly releasing six (6) canaries, valued at approximately $150.00, from an aviary owned by his neighbor Eva Tamayo. Mr. Solorzano was  subsequently arrested for "terrorist threats" after allegedly threatening Tamayo. Plaintiff is informed, believes and thereupon alleges that Ms. Tamayo is bipolar, delusional and there is substantial evidence that Ms. Tamayo's allegations were fabricated.

14.  Mr. Solorzano's bail was withdrawn and he was returned to custody at the VCJ on October 3, 2014. VCJ staff requested that Mr. Solorzano be seen by "psych" staff related to bizarre behavior while on the booking floor.

15. In VCJ medical records dated October 6, 2014, Mr. Solorzano stated: "I feel paranoid. I have not slept in days." The same record reflects, under the suicidality section, that Mr. Solorzano "hung himself" at the Todd Road Jail facility seven years ago.

16. On March 10, 2015, Mr. Solorzano filled out a Request for Medical Care. The reason for the request was: "Can I please see a psychologist... having mood swings..." Plaintiff is informed, believes and thereupon alleges that Mr. Solorzano never saw a psychologist, psychiatrist or medical doctor and, instead, was merely treated by nurses and/or "psych nurses," if treated at all. There is no indication Mr. Solorzano was ever seen by a psychologist, psychiatrist or licensed medical doctor. There is no indication Mr. Solorzano was ever properly diagnosed, or diagnosed at all. Plaintiff is informed, believes and thereupon alleges that Mr. Solorzano was not properly prescribed, or provided, appropriate medications for his mental health disorder.

17. On March 12, 2015, Mr. Solorzano complained of having mood swings. "I could cry, then get happy." Mr. Solorzano was to be further evaluated for medications. On March 16, 215, Mr. Solorzano again complained of mood swings, being depressed and having anxiety. VCJ medical records on this date reflect that Mr. Solorzano previously attempted suicide. On or about April 3, 2015, Mr. Solorzano was placed on topomax. By April 10, 2015, Mr. Solorzano was refusing to take topomax.

18. On April 16, 2015, Mr. Solorzano made suicidal statements. CFMG psych staff noted: "Suicidal inmate. I am seeing things, I am getting delusional, I see demons eating my brain. Its colorful like the rainbow... I need to go to Patton. I was going to kill myself. I tried to hang myself this morning. I have the blade ready to kill myself tonight. It was going to be perfect." Despite these revelations by Mr. Solorzano, Mr. Solorzano was simply placed in a safety cell level I.

19. The following day, on April 17, 2015, Mr. Solorzano asked to get out of the safety cell, denying suicidal statements or ideation. The safety precautions were discontinued and Mr. Solorzano was taken out of the safety cell. Plaintiff is informed, believes and thereupon alleges that Mr. Solorzano never saw a psychologist, psychiatrist or medical doctor and, instead, was merely treated by nurses and "psych nurses" following his threat to commit suicide.

20. Due to the concerns of Mr. Solorzano's criminal defense attorney, a California Penal Code § 1368 hearing was held to determine Mr. Solorzano's competency to stand trial. On April 29 2015, the court determined that Mr. Solorzano was not competent, noted that Mr. Solorzano consented to the administration of psychotropic medication and ordered him placed at Patton State Hospital.

21. On May 14, 2015, Mr. Solorzano again complained of seeing things, but was apparently unable to elaborate. He was then dragged down the hall by multiple deputies, allegedly for being loud and resisting. On May 15, 2015, Mr. Solorzano told a CFMG psych nurse: " I am hearing different things. They are not words. Can I be yellow band? I do not want to be around red banders. I change my moods. I stay up all night and then feel weird." Despite this admission of his psychotic state, nothing was done for Mr. Solorzano.

22. On May 19, 2015, there was a suicidal quad call. Mr. Solorzano stated: " I see a little creature. Meds make me feel more scattered. I want to go to medical. I like it better there." Despite this admission of his psychotic state, nothing was done for Mr. Solorzano.

23. On May 25, 2015, Edgar Solorzano hung himself in the Ventura County Jail at approximately 4:30 a.m. using a blade and bed sheet, just as he had stated on April 16, 2015. Plaintiff is informed, believes and thereupon alleges that on two separate occasions, decedent was placed in the "hole" (administrative segregation) for up to four weeks on each occasion. One of these instances occurred within weeks of decedent's suicide and both contributed to decedent's rapidly deteriorating mental health condition.

24. On May 26, 2015, the Ventura County Medical Examiner's Office performed an autopsy and determined that the cause of death was asphyxia by hanging and that the manner of death was suicide.

25. Plaintiff is informed, believes and thereupon alleges that Sheriff Dean is regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates, jail suicides and other violations involving the housing, care, mental health care, and treatment of inmates at VCJ. Sheriff Dean is

sued in his individual capacity, as a supervisor, for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional depravations conduct that showed reckless or callous indifference for others. Sheriff Dean's affirmative conduct involves: (1) his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew, or reasonably should have known, would cause others to inflict a constitutional injury on Mr. Solorzano; (2) allowing the policy of placing inmates with severe mental illness in solitary confinement for weeks on end, thereby significantly exacerbating the isolated inmate's psychosis.

26. At all times herein mentioned, Mr. Solorzano was a pre-trial detainee suffering from a serious, but treatable mental illness. Upon booking at VCJ and thereafter, custodial staff and personnel knew, or should have known: (1) that Mr. Solorzano had a serious but treatable mental and medical illness; (2) that decedent's mental health was deteriorating and that decedent needed immediate medical and psychiatric care and/or a higher level of medical and psychiatric care, but failed to do so. VCJ custodial and medical staff ignored and/or disregarded their duties and responsibilities for decedent's urgent medical needs.

27. Despite Mr. Solorzano's prior suicide attempt while in VCJ, his request for psychiatric care, his statement that he had a plan to commit suicide by hanging with a bed sheet and a blade (both of which he subsequently used), and his obviously deteriorating psychiatric condition, defendants did nothing. By placing Mr. Solorzano in the "hole," defendants contributed to and exacerbated Mr. Solorzano's mental and medical condition. Defendants failed to properly classify, house, monitor or provide reasonable security. Defendants failed to provide Mr. Solorzano medical and psychiatric care for his suicidal and psychiatric disabilities, and failed to refer decedent to a specialist, psychologist, psychiatrist or anyone other than psych nurses. Defendants

failed to properly transfer Mr. Solorzano to Patton State Hospital or to any other public or private treatment facility or to place him on outpatient status as specified in Penal Code §1600.

## III.

### FIRST CLAIM FOR RELIEF

### 42 U.S.C. §1983 VIOLATIONS

### (Plaintiff v. All Defendants)

28. Plaintiff repeats and realleges paragraphs 1 through 27, inclusive, as though set forth full herein.

29. 42 U.S.C. § 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state.... subjects, or causes to be subjected, any citizen of the United states or other person within  the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law , suit in equity, or other proper proceeding for redress..."

### COUNT I - 14TH AMENDMENT- MEDICAL CARE

30. The Fourteenth Amendment imposes duties on custodial and law enforcement officials to provide humane conditions of confinement; to ensure that inmates receive adequate food, clothing, shelter, and medical care; and to take reasonable measures to guarantee the safety of inmates.  A custodial official's deliberate indifference to a pretrial detainee's medical needs constitutes a violation of the Fourteenth Amendment's Due Process clause. *Clouthier v. County of Contra Costa* (9th Cir. 2010) 591 F.3d 1232, 1242,. A serious medical need is present whenever the

failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.

31. Defendants CFMG, Does 1 through 25 and Does 51 through 100, acting under color of state law in their individual capacities, deprived Mr. Solorzano of the rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution by subjecting him, or through their deliberate indifference allowing others to subject him to, delay and denial of access to medical and mental health care for a serious but treatable medical and mental health condition. These named defendants knew, or must have known: (1) that Mr. Solorzano's mental health condition was serious but treatable; (2) knew or must have known that Mr. Solorzano had previously attempted suicide while at VCJ; (3) that there was a Court Order finding Mr. Solorzano incompetent to stand trial and ordering that he be transferred to Patton State Hospital; (3) that placing Mr. Solorzano in segregated isolation ("hole") would exacerbate Mr. Solorzano's psychotic condition; (4) that Mr. Solrozano had threatened to commit suicide on April 16, 2015 while in custody; (5) that Mr. Solorzano had threatened to hang himself with bed sheets and cut himself with a blade; (6) that placing Mr. Solorzano in a cell by himself with cloth sheets and lacking suicide preacautions would enable Mr. Solorzano to commit suicide; and (7) that Mr. Solorzano was never seen by a doctor, psychologist, psychiatrist or other specialist while incarcerated at VCJ and, instead, was treated by nurses or psych nurses.

32. As a direct and proximate result of these named defendants' acts and/or omissions plaintiff, individually, sustained the following injuries: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and burial expenses; (3) loss of support, familial relationships, love, companionship, comfort, affection, consortium, society, services, solace and moral support; (4) emotional distress; and (5) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under

California and federal statutes, codes and common law. Plaintiff is seeking $2,000,000.00 in damages.

33. As a further direct and proximate result of these named defendants' acts and/or omissions, plaintiff Guadalupe Raya, as successor in interest to the Estate of Edgar Solorzano, sustained the following injuries and damages: (1) hospital, medical and burial expenses; (2) Edgar Solorzano's loss of life; and (3) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law. Plaintiff is seeking $2,000,000.00 in damages.

34. The conduct of said defendants was despicable, fraudulent, malicious, oppressive and in reckless and/ or conscious disregard of the rights of decedent, entitling plaintiff to punitive and exemplary damages in an amount sufficient to punish said defendants and to deter similar wrongdoing by others.

## COUNT II -MUNICIPAL LIABILITY
### (Plaintiff v. Ventura County)

35. Plaintiff is informed, believes and thereupon alleges that, at all times herein mentioned, defendant Ventura County, with deliberate indifference and conscious and reckless disregard for the safety, security and constitutional and statutory rights of Mr. Solorzano, engaged in the unconstitutional conduct and omissions as set forth hereinbefore. Ventura County authorized or ratified the wrongful acts of the individual defendants herein. The individual defendants' wrongful conduct was the result of policies, practices and customs to subject inmates of VCJ to unconstitutionally inadequate treatment for inmates' mental health conditions and permitted and promoted unsafe conditions for inmates leading to a heightened risk of suicide. The actions and

inactions of VCSD and its custody staff were known, or should have been known, to the policy makers of Ventura County.

36. The customs, policies, practices and/or procedures of VCSD, which were directed, encouraged, allowed and/ or ratified by policy making officers for Ventura County, include, but are not limited to: (1) to deny inmates at VCSD medical and psychiatric care and treatment; (2) to fail to properly classify, house and/or monitor inmates at VCSD suffering from a mental health disability; (3) to fail to provide mental health care for inmates with serious mental health issues; (4) to fail to use appropriate and generally accepted jail procedures for handling suicidal, mentally ill and/or emotionally disturbed inmates; (5) to fail to institute or require and enforce proper and adequate training, supervision, policies and procedures concerning the handling of mentally ill and/or emotionally disturbed inmates at VCJ; and (6) to allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and sheriff department personnel.

37. As a direct and proximate result of these named defendants' acts and/or omissions, plaintiff, individually, sustained the following injuries: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and burial expenses; (3) loss of support, familial relationships, love, companionship, comfort, affection, consortium, society, services, solace and moral support; (4) emotional distress; and (5) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law. Plaintiff is seeking $2,000,000.00 in damages.

38. As a further direct and proximate result of these named defendants' acts and/or omissions, plaintiff Guadalupe Raya, as successor in interest to the Estate of

1   Edgar Solorzano, sustained the following injuries and damages: (1) hospital, medical

2   and burial expenses; (2) Edgar Solorzano's loss of life; and (3) all damages and

3   penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed

4   under California and federal statutes, codes and common law. Plaintiff is seeking

5   $2,000,000.00 in damages.

6

7   39. The conduct of said defendants was despicable, fraudulent, malicious,

8   oppressive and in reckless and/ or conscious disregard of the rights of decedent,

9   entitling plaintiff to punitive and exemplary damages in an amount sufficient to punish

10  said defendants and to deter similar wrongdoing by others.

11

12  **COUNT III- SUPERVISORY LIABILITY**

13  **(Plaintiff v. Sheriff Dean and Does 26 through 50)**

14  40. These named defendants acted under color of law, the acts of these

15  defendants' subordinates deprived Mr. Solorzano of his state and federal rights as

16  alleged herein, and these named defendants directed their subordinates in the acts that

17  deprived Mr. Solorzano of his rights. These defendants set in motion a series of acts by

18  their subordinates that they knew, or should have known, would cause these

19  subordinates to deprive Mr. Solorzano of his state and federal rights; these named

20  defendants knew, or reasonably should have known, that their subordinates  were

21  engaging in these acts and omissions; and these named defendants failed to act to

22  prevent their subordinates from engaging in such conduct.

23

24  41. Sheriff Dean and Does 26 through 50: (1) failed to properly train, assign,

25  supervise and guide their staff and medical personnel assigned to VCJ; (2) failed to

26  take immediate measures to transfer decedent to Patton State Hospital pursuant to

27  Court Order; (3) either participated in, knew of, or must have known of, their

28  subordinates' deliberate indifference in failing to properly classify, house and monitor

---

1  inmates suffering from mental health disabilities; (4) knew of the denial of access to

2  mental and health care and treatment to inmate patients, causing injury or death; (5)

3  failed to supervise the services for pretrial detainee inmates; (6) failed to have adequate

4  staff and personnel and had inadequate leadership and supervision; (7) failed to

5  provide care or access to medical or mental health for inmate patients with serious but

6  treatable medical and mental conditions; and (8) operated with inadequate safeguards ,

7  audits, or reporting requirements reviewable by supervisors.

8

9       42.  As a direct and proximate result of these named defendants' acts and/or

10  omissions, plaintiff, individually, sustained the following injuries: (1) wrongful death of

11  Edgar Solorzano; (2) hospital, medical and burial expenses; (3) loss of support, familial

12  relationships, love, companionship, comfort, affection, consortium, society, services,

13  solace and moral support; (4) emotional distress; and (5) all damages and penalties

14  available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under

15  California and federal statutes, codes and common law.

16

17       43. As a further direct and proximate result of these named defendants acts

18  and/or omissions, plaintiff Guadalupe Raya, as successor in interest to the Estate of

19  Edgar Solorzano, sustained the following injuries and damages: (1) hospital, medical

20  and burial expenses; (2) Edgar Solorzano's loss of life; and (3) all damages and

21  penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed

22  under California and federal statutes, codes and common law.

23

24       44. The conduct of said defendants was despicable, fraudulent, malicious,

25  oppressive and in reckless and/ or conscious disregard of the rights of decedent,

26  entitling plaintiff to punitive and exemplary damages in an amount sufficient to punish

27  said defendants and to deter similar wrongdoing by others.

28  //

---

**FIRST AMENDED COMPLAINT FOR DAMAGES**

# IV.

## SECOND CLAIM FOR RELIEF

## WRONGFUL DEATH [C.C.P. §§377.60; 377.20]

### (Plaintiff v. All Defendants)

45. Plaintiff repeats and realleges paragraphs 1 through 27, inclusive, as though set forth full herein.

46. C.C.P. § 377.60 establishes a separate statutory cause of action in favor of specified heirs of a person who dies as a result of the "wrongful act or neglect" of another. The specified heirs are entitled to recover damages on their own behalf for the loss they have sustained by reason of the victim's death. *Corder v. Corder* (2007) 41 Cal.4th 644, 651; *Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 819. A wrongful death claim is separate and distinct from the victim's action which "survives" to the estate pursuant to C.C.P. § 377.20. Therefore, plaintiff Guadalupe Raya is proceeding on her own wrongful death claim as well as the survival action in her capacity as the successor in interest to the estate of Edgar Solorzano.

47. Plaintiff Raya is statutorily entitled and has standing to proceed pursuant to C.C.P. § 377.60(a). Plaintiff Raya is the natural mother of decedent, who was not married, had no domestic partner and had no issue. *Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1440. Further, plaintiff Raya was dependent upon the victim to a degree at the time of his death. C.C.P.§377.60(b). Decedent resided with plaintiff at the time of his death and contributed to plaintiff's necessaries of life.

48. Defendants, and each of them, acted negligently, with gross negligence, intentionally, wantonly and with culpable and callous disregard for the rights and life of Mr. Solorzano. Plaintiff specifically incorporates herein by reference each paragraph contained in every other claim for relief set forth herein.

49. As a direct and proximate result of these named defendants' acts and/or omissions, plaintiff, individually, sustained the following injuries: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and burial expenses; (3) loss of support, familial relationships, love, companionship, comfort, affection, consortium, society, services, solace and moral support; (4) emotional distress; and (5) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

50. As a further direct and proximate result of these named defendants acts and/or omissions, plaintiff Guadalupe Raya, as successor in interest to the Estate of Edgar Solorzano, sustained the following injuries and damages: (1) hospital, medical and burial expenses; (2) Edgar Solorzano's loss of life; and (4) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

## V.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF AMERICANS WITH DISABILITIES ACT (ADA), TITLE II, 42 U.S.C. §12101 et seq., THE REHABILITATION ACT, 29 U.S.C. §794, AND CALIFORNIA UNRUH ACT, CAL. CIVIL CODE §51 et seq.

### (Plaintiff v. All Defendants)

51. Plaintiff repeats and realleges paragraphs 1 through 27, inclusive, as though set forth full herein.

52. Congress enacted the ADA upon a finding, amongst other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a serious and pervasive social problem." 42

1    U.S.C. §12101(a)(2).

2

3         53. Edgar Solorzano was a "qualified individual" with a mental impairment that

4    substantially limited his ability to care for himself and control his mental, medical or

5    physical health condition as defined under the Americans with Disabilities Act (ADA), 42

6    U.S.C. §12131(2), under §504 under Rehabilitation Act of 1973 (RH), 29 U.S.C. §794

7    and California Civil Code § 51 et seq. Mr. Solorzano qualified as an individual with a

8    disability and he met the essential eligibility requirements of Ventura County and

9    VCSD's programs to provide mental/medical health services for its inmate patients at

10   VCJ.

11

12        54. Defendant Ventura County, VCSD and VCJ are a place of public

13   accommodation and a covered entity for purposes of enforcement of the ADA, 42

14   U.S.C. §12131(2), §504 of the Rehabilitation Act of 1973, and California Civil Code § 51

15   et seq.

16

17        55. Defendant Ventura County "engaged in the business of... health care" and

18   provided custody for persons whose "operations" fall within the definition of "program or

19   activity" covered by the Rehabilitation Act, 29 U.S.C. §794(b).

20

21        56. Under the ADA, Ventura County is mandated to "develop an effective,

22   integrated, comprehensive system for the delivery of all services to persons with mental

23   disabilities and developmental disabilities..." and to ensure "that the personal and civil

24   rights" of persons who are receiving services under its aegis are protected.

25

26        57. Ventura County is mandated under the ADA to not discriminate against any

27   qualified individual on the basis of disability in the full and equal enjoyment of the

28   goods, services, facilities, privileges, advantages, or accommodations of any place of

public accommodation." 42 U.S.C. §12182(a).

58. Defendant Ventura County receives federal financial assistance for their jails and therefore must comply with the mandates of the Rehabilitation Act, which specifies that "program or activity" means all of the operations of a department, agency, special purpose district, or other instrumentality of a state or local government.

59. Defendant Ventura County, and other defendants, violated the ADA, RA and Cal. Civ. Code §51 et seq. and deprived Mr. Solorzano of his federal and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with VCJ; (b) failing to provide services or accommodate Mr. Solorzano with access to the programs and services of Ventura County within VCJ for persons who qualify for services under California and federal law; (c) failing to provide services or accommodate Mr. Solorzano with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled; (d) failing to provide reasonable accommodations to people in custody with mental disabilities in their jail and, instead, providing quality of care and service that is different, separate and that is worse than the service provided to other individuals with the same disability; and (e) failing to properly train its deputies, medical and mental health staff, employees and officers on how to peacefully respond, treat and interact with disabled persons such as Mr. Solorzano.

60. Mr. Solorzano was denied the services, programs and activities of Ventura County which deprived him of mental health and medical health programs and services which would have provided the delivery of treatment, follow- up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and gravely  disabled, in that he

1  suffered from conditions in which a person, as a result of a mental disorder, is unable to

2  provide for his basic personal needs and to protect himself from self- harm. Defendants

3  failure to properly train their employees and the denial of mental and medical health

4  care treatment, follow- up, training and supervision resulted in the violation of Mr.

5  Solorzano's constitutional rights.

6

7                                         VI.

8                            FOURTH CLAIM FOR RELIEF

9                    CALIFORNIA GOVERNMENT CODE §845.6

10              (Plaintiff v. Ventura County and Does 1 through 25)

11

12      61. Plaintiff repeats and realleges paragraphs 1 through 27, inclusive, as though

13  set forth full herein.

14

15      62. Government Code § 845.6 provides in pertinent part: "[A] public employee,

16  and the public entity where the employee is acting within the scope of his employment,

17  is liable if the employee knows or has reason to know that the prisoner is in need of

18  immediate medical care and he fails to take reasonable action to summon such medical

19  care."

20

21      63. Doe defendants 1 through 25 are VCSD and/or VCJ staff and employees

22  who knew, or had reason to know: (1) that Mr. Solorzano was in need of immediate

23  and/or a higher level of medical and psychiatric care, treatment, observation and

24  monitoring; (2) that he required special housing and security for his safety and well

25  being; (3) that Mr. Solorzano should not have been placed in the "hole" nor housed in a

26  single-man cell.

27

28      64. Each of these named defendants failed to take reasonable action to: (1)

1    summon and/or to provide Mr. Solorzano access to medical and psychiatric care and

2    treatment; and (2) provide Mr. Solorzano monitoring and housing accommodations as

3    indicated under the circumstances. These named defendants failed to take reasonable

4    action to provide Mr. Solorzano access to such care, treatment, monitoring and housing

5    as his circumstances required, all in violation of California Government Code §845.6.

6

7         65. As a legal and proximate cause of the afformentioned acts of these named

8    defendants, Mr. Solorzano committed suicide. Plaintiff was injured as set forth herein

9    and her losses entitle her to damages, in an amount according to proof, according to

10   California law.

11

12   VII.

13   FIFTH CLAIM FOR RELIEF

14   NEGLIGENCE

15   **(Plaintiff v. Sheriff Dean, CFMG, Does 1 through 100)**

16

17        66. Plaintiff repeats and realleges paragraphs 1 through 27, inclusive, as though

18   set forth full herein.

19

20        67. Cal. Civ. Code § 1714(a) provides that: "Everyone is responsible, not only for

21   the result of his wilful acts, but also for the injury occasioned to another by his want of

22   ordinary care or skill in the management of his property or person..." Defendants had a

23   duty to: (1) render access and delivery of mental and medical care, treatment and/or

24   emergency services to Mr. Solorzano for his mental health condition; and (2) provide

25   reasonable security, housing and monitoring of Mr. Solorzano as he was in their care,

26   custody and control and under their sole and exclusive medical care and treatment.

27

28        68. Negligence consists of acts or omissions which are not compatible with the

1  standard of care exercised by a reasonable man of ordinary prudence. Defendants

2  breached their duties by failing to properly house, monitor, care for, provide appropriate

3  medical care and treatment and to ensure Mr. Solorzano did not engage in self- harm.

4

5       69. As a direct and proximate result of the negligence of defendants, whose acts

6  were a substantial factor in bringing about the suicide of Mr. Solorzano, plaintiff has

7  suffered, and will continue to suffer, loss of  comfort, society and companionship,

8  together with the monetary and financial assistant decedent may have provided. As a

9  further legal and proximate result, plaintiff, in her individual and representative

10 capacities, has been damaged in an amount according to proof.

11

12                              VIII.

13              SIXTH CLAIM FOR RELIEF

14              MEDICAL MALPRACTICE

15       **(Plaintiff v. CFMG and Does 51 through 100)**

16

17      70. Plaintiff repeats and realleges paragraphs 1 through 27, inclusive, as though

18 set forth full herein.

19

20      71. During the time that defendants provided medical and mental care to

21 decedent Edgar Solorzano, they held themselves out to be members of the medical

22 profession and/or nurses, technicians or other medical personnel, in that they were to

23 provide health care, services and treatment within the standard of care.

24

25      72. These named defendants, and each of them, negligently rendered medical

26 services, failed to render medical services and failed to conform to the standard of care

27 required of them in rendering care to, or in rendering professional services to, decedent

28 Edgar Solorzano as more fully described hereinbefore. As a result of such negligence,

1    Mr. Solorzano committed suicide.

2

3        73. As a direct and proximate result of the afformentioned conduct of these

4    named defendants, and each of them, plaintiff has suffered, and will continue to suffer,

5    loss of comfort, society and companionship, together with the monetary and financial

6    assistance decedent would have provided.

7

8        74.  As a further direct and proximate result of the afformentioned conduct of

9    these named defendants, and each of them, plaintiff was compelled to, and did, incur

10   burial and other pecuniary damages in an amount according to proof.

11

12       **WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of

13   them, as follows:

14

15                            **FIRST CLAIM FOR RELIEF**

16       1. For general damages, in an amount according to proof;

17       2. For special damages, in an amount according to proof;

18       3. For punitive damages;

19       4. For statutory damages;

20       5. For prejudgement interest;

21       6.For attorney's fees and costs of suit; and

22       7. For such other and further relief as the Court may deem just and proper.

23

24                           **SECOND CLAIM FOR RELIEF**

25       1. For general damages, in an amount according to proof;

26       2. For special damages, in an amount according to proof;

27       3. For punitive damages;

28       4. For costs of suit incurred herein; and

---

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1    5. For such other and further relief as the Court may deem just and proper.

2

3                           **THIRD  CLAIM FOR RELIEF**

4    1. For compensatory damages, in an amount according to proof;

5    2. For treble damages;

6    3. For punitive damages;

7    4. For costs of suit incurred herein;

8    5. For attorney's fees;

9    6. For statutory damages; and

10   7. For such other relief as the court may deem just and proper.

11

12                          **FOURTH CLAIM FOR RELIEF**

13   1. For compensatory damages, in an amount according to proof;

14   2. For statutory damages, in an amount according to proof;

15   3. For punitive damages;

16   4. For costs of suit; and

17   5. For such other and further relief as the Court may deem just and proper.

18

19                           **FIFTH CLAIM FOR RELIEF**

20   1. For general damages in an amount according to proof;

21   2. For special damages, in an amount according to proof;

22   3. For costs of suit incurred herein; and

23   4. For such other and further relief as the Court may deem just and proper.

24   //

25   //

26   //

27   //

28

---

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1

## SIXTH CLAIM FOR RELIEF

2   1. For general damages in an amount according to proof;

3   2. For special damages, in an amount according to proof;

4   3. For costs of suit incurred herein; and

5   4. For such other and further relief as the Court may deem just and proper.

6

7   DATED: _____, 2015            By:_____

8                                                    Brian A. Osborne
                                                     Attorney for Plaintiff

9

10                         **PLAINTIFF DEMANDS A JURY TRIAL**

11

12

13   DATED: _____, 2015            By:_____

14                                                    Brian A. Osborne
                                                     Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**FIRST AMENDED COMPLAINT FOR DAMAGES**