1  Brian A. Osborne, SBN 126963
2  osborneb@sbcglobal.net
   OSBORNE LAW FIRM
3  674 County Square Drive, Suite 310
4  Ventura, CA 93003
   Phone: (805) 642-9283
5  Facsimile: (805) 642-7054
6
7  Brian A. Vogel, SBN 167413
   brian@bvogel.com
8  LAW OFFICES OF BRIAN A. VOGEL, P.C.
9  779 County Square Drive, Suite 104
   Ventura, CA 93003
10 Phone: (805) 654-0400
11 Facsimile: (805) 654-0326
12
   Attorneys for Plaintiff GUADALUPE RAYA
13
14             UNITED STATES DISTRICT COURT
15
               CENTRAL DISTRICT OF CALIFORNIA
16
17
18 GUADALUPE RAYA, an individual          Case No. 2:15-cv-07673-CBM (JCx)
19 and successor-in-interest to EDGAR     **SECOND AMENDED COMPLAINT**
   SOLORZANO, deceased,                   **FOR DAMAGES**
20
21              Plaintiff,                1.  42 U.S.C. § 1983 - Deliberate
                                          Indifference to Medical
22 vs.                                    Needs
                                          2.  42 U.S.C. § 1983 – Substantive Due
23 COUNTY OF VENTURA; VENTURA             Process Right of Incapacitated Criminal
   COUNTY SHERIFF GEOFF DEAN,             Defendant to Restorative Treatment
24 an individual and an official;         3)  Municipal Liability on Decedent's
   CALIFORNIA FORENSIC MEDICAL            42 U.S.C. § 1983 Claims - Deliberate
25                                        Indifference and Substantive Due
   GROUP, INC.; GERONIMO                  Process Right of Incapacitated Criminal
26 SOLORZANO, an individual;              Defendant to Restorative Treatment
27 TAYLOR FITHIAN, M.D., an               4)  Municipal Liability on Decedent's
                                          42 U.S.C. § 1983 Claims – Failure to
28 individual and an official; PAUL       Screen, Train, Supervise and Reprimand
                                          5)  Wrongful Death – Cal. Code of
                                          Civil Procedure §§ 377.60 and 377.61

                    SECOND AMENDED COMPLAINT

                              1

1   ADLER, M.D., an individual and an              )   6)   Violation of Americans with
2   official; RONALD POLLACK, M.D.,                )   Disabilities Act (ADA), Title II, 42
    an individual and an official; DIANE           )   U.S.C. §12101 *et seq.*, The
3   BELMONTES, L.V.N., an individual               )   Rehabilitation Act, 29 U.S.C. §794, and
    and an official; and DOES 1 through 10,)       )   Cal. Unruh Act, Cal. Civil Code §51 *et*
4   inclusive,                                     )   *seq.*
5                                                  )   7)   Cal. Government Code § 845.6
                                                   )   (Failure To Summon Medical Care)
6                  Defendants.                     )   8)   Negligence and Failure to Discharge
                                                   )   Mandatory Duty - Cal. Government
7                                                  )   Code § 815.6
    ─────────────────────────────                  )   9)   Medical Malpractice
8

9                                         **DEMAND FOR JURY TRIAL**

10          Plaintiff Guadalupe Raya, individually and as successor-in-interest, alleges

11   as follows:

12                              **JURISDICTION AND VENUE**

13   1.      Jurisdiction over the claims asserted herein is based upon federal subject

14   matter jurisdiction [42 U.S.C. § 1983] pursuant to 28 U.S.C. §§ 1331 and 1343(3).

15   This suit includes supplemental state law claims for and requests for declaratory

16   and injunctive relief.  This Court has supplemental jurisdiction over these state law

17   claims pursuant to 28 U.S.C. § 1367(a).

18   2.      Venue in the United States District Court, Central District of California, is

19   based upon 28 U.S.C. § 1391(a) (2) in that a substantial part of the events giving

20   rise to the claims occurred in this district.

21                                          **PARTIES**

22   3.      Plaintiff Guadalupe Raya ("Raya") is now, and at all times herein mentioned

23   was, an individual residing in the City of Oxnard, County of Ventura, State of

California. Raya is the natural mother of Decedent Edgar Solorzano and is his sole successor-in-interest.

4.     Plaintiff Raya succeeds to Decedent Edgar Solorzano's claims for relief against defendants named herein because there is no personal representative of the estate of Decedent Edgar Solorzano.  Plaintiff Raya has executed and filed the declaration under penalty of perjury required by *California Code of Civil Procedure* § 377.32.

5.     Defendant County of Ventura ("Ventura County") is now, and at all times herein mentioned was, a governmental entity duly organized and existing under the laws of the State of California and which oversees, owns, operates, manages, directs and controls Ventura County Sheriff's Office ("VCSO"), an agency of Ventura County.

6.     Defendant Ventura County Sheriff Geoff Dean ("Sheriff Dean") is now, and at all times herein mentioned was, the Sheriff of Ventura County and was responsible for the management, supervision, control and policy making at the two primary custodial facilities in the county, i.e., the Ventura County Pre-Trial Detention Facility ("VCPTDF"), and the Todd Road Jail ("TRJ").  Sheriff Dean is also responsible for the supervision and training of peace deputies employed by VCSO. Sheriff Dean is further responsible for the care, custody, control and safekeeping of inmates in his custody. *California Government Code* §§ 26605,

**SECOND AMENDED COMPLAINT**

26610; *California Penal Code* § 4006. Sheriff Dean is responsible for: (1) the management and control of Ventura County Jail; (2) the selection, promotion, supervision, training, discipline and retention of agents and employees working at the VCPTDF and TRJ, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff and supervisors; and (3) the implementation of policies and procedures at VCPTDF.

7.      California Forensic Medical Group, Inc. ("CFMG"), its agents, deputies, employees, and independent contractors, at all times mentioned herein was and is an agent of defendants Ventura County, VCSO and Sheriff Dean and was and is under contract with defendants Ventura County, VCSO and Sheriff Dean for the purpose of providing medical care and treatment on behalf of defendants Ventura County, VCSO and Sheriff Dean to inmates, sentenced prisoners, and pre-trial detainees under the care and control of defendants Ventura County, VCSO and Sheriff Dean, and is at all times mentioned herein, acting under color of law and under the direction an agency of defendants Ventura County, VCSO and Sheriff Dean to provide such care and treatment to inmates, sentenced prisoners, and pre-trial detainees.

8.      Defendant Geronimo Solorzano is now, and at all times herein mentioned was a resident of the City of Oxnard, County of Ventura, State of California. Geronimo Solorzano is the natural father of decedent Edgar Solorzano and is

**SECOND AMENDED COMPLAINT**

4

named pursuant to C.C.P. § 382. Geronimo Solorzano abandoned Edgar Solorzano before age nine, had no contact with Edgar Solorzano since that time, and is not entitled to damages herein. He was personally served with the first amended complaint in this matter and suffered a default judgment. He is no longer a party to this action.

9.      Defendant Taylor Fithian, M.D. ("Fithian"), at all times mentioned herein, was and is an employee and/or agent of VCSO, SHERIFF DEAN and CFMG, acting under color of law, who was and is the Medical Director of CFMG and the physician responsible for establishing policies and practices for CFMG employees and was and is responsible for training, supervision and management of CFMG employees including doctors, nurses, and nurse practitioners at VCPTDF. Defendant Fithian is being sued in his official and individual capacity.

10.      Defendant Paul Adler, M.D. ("Adler"), at all times mentioned herein, was and is an employee and/or agent of VCSO, SHERIFF DEAN and CFMG, acting under color of law, who was and is the On-site Medical Director of CFMG at VCPTDF and the physician hired to provide medical care, attention, and treatment to inmates and detainees at VCPTDF. He was and is the physician responsible for hiring, training, supervision and management of subordinate medical staff providers, including doctors, nurses, and nurse practitioners at VCPTDF. Defendant Adler is being sued in his individual and official capacity.

**SECOND AMENDED COMPLAINT**

11.    Defendant Ronald Pollack, M.D. ("Pollack"), at all times mentioned herein, was and is an employee and/or agent of VCSO, SHERIFF DEAN and CFMG, acting under color of law, who was and is a psychiatrist at VCPTDF and a physician hired to provide mental health treatment to inmates and detainees at VCPTDF.  Defendant Pollack was a treating physician of the decedent, Mr. Solorzano.  Defendant Pollack is being sued in his individual and official capacity.

12.    Defendant Diane Belmontes, L.V.N. ("Belmontes"), is also known by her maiden name as Diane Rodelander or Diane Rodelander-Belmontes.  At all times mentioned herein, Belomontes was and is an employee and/or agent of VCSO, SHERIFF DEAN and CFMG, acting under color of law, who was and is a mental health nurse at VCPTDF and a nurse hired to provide mental health treatment to inmates and detainees at VCPTDF.  Defendant Belmontes was a treating nurse of the decedent, Mr. Solorzano.  Defendant Belmontes is being sued in her individual and official capacity.

13.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this complaint to show such true names and capacities when she has ascertained the same.  Plaintiff is informed, believes and thereupon alleges that each Doe Defendant named herein is, in some manner, legally responsible for the

**SECOND AMENDED COMPLAINT**

6

acts complained of.  Does 1 through 3 are VCSO and/or VCPTDF employees and staff. Does 4 through 7 are VCSO and/or VCPTDF executive, management, and/or policy making staff and employees. Does 7 through 9 are CFMG medical doctors and/or mental health professionals.  Does 9 through 10 are CFMG nurses, psych nurses, and/or employees and staff.

14.    At all times herein mentioned Defendants, and each of them, were the agents, servants and employees of each of the Co-Defendants, and in doing the things herein mentioned were acting within the purpose, course and scope of their authorities and employment as such agents, servants and employees, and with the permission and consent of said Co-Defendants.

15.    Plaintiff filed a governmental tort claim for money damages with Ventura County as required by the controlling sections of the *California Government Code*. The claim was rejected on July 23, 2015 and the complaint was timely filed.

16.    The acts and omissions of all defendants were engaged in maliciously, callously, oppressively, wantonly, and with deliberate indifference to the rights of decedent Solorzano.

## STATEMENT OF FACTS

17.    Edgar Solorzano was born on October 6, 1983.  Mr. Solorzano was 31 years old at the time of his suicide while incarcerated in the Ventura County Jail. Mr.

Solorzano had a prior suicide attempt while in custody at the Ventura County Jail in or about 2004.

18.     Mr. Solorzano was in custody at the VCPTDF after originally being arrested for allegedly releasing six (6) canaries, valued at approximately $150.00, from an aviary owned by his neighbor, Eva Tamayo. Mr. Solorzano was subsequently arrested for "terrorist threats" after allegedly threatening Tamayo. Plaintiff is informed, believes and thereupon alleges that Ms. Tamayo is bipolar, delusional and there is substantial evidence that Ms. Tamayo's allegations were fabricated.

## RELEVANT COURT PROCEEDINGS

19.     On October 5, 2014, Mr. Solorzano's criminal case was pending for jury trial, and he was out of custody on $30,000 bail.  On October 6, 2014, his bondsman surrendered him to the custody of the VCPTDF and on October 7, 2014, the court exonerated the bail bond and doubled his bail to $60,000.  After several continuances, he was referred for a Mental Health Court program eligibility determination.

20.     On February 9, 2015, his defense attorney declared a doubt as to his competence to stand trial pursuant to *Penal Code* section 1368.  Criminal proceedings were suspended and civil competency proceedings were instituted.  It appears that the first psychologist appointed to examine Mr. Solorzano was unable

to accept the appointment and perform the evaluation.  Dr. Kathryn Davis was then appointed to perform the evaluation on February 23, 2015.

21.    On March 24, 2015, the court received Dr. Davis' report finding Mr. Solorzano incompetent and on March 25, 2015, the court formally found Mr. Solorzano incompetent to stand trial ("IST") pursuant to *Penal Code* section 1368. The case was then continued several times for a hearing regarding Mr. Solorzano's placement in a treatment facility.

22.    On April 29, 2015, Mr. Solorzano remained in custody at the VCPTDF and the court ordered the Sheriff to transport him to Patton State Hospital for a maximum term of 56 months and made a finding that Mr. Solorzano consented to the administration of psychotropic medication.  On May 6, 2015, the court sent the VCSO transportation unit a "Patton packet," a group of documents which the State hospital requires to admit civil commitment detainees for treatment.  The "Patton packet" included Mr. Solorzano's psychological evaluation, the minute orders from his criminal case, his arrest and conviction history (also known as a "rap sheet" or CLETS printout), and the police reports for all criminal cases including any violations of probation which were pending at the time that he was found incompetent.  No further court proceedings occurred until the court abated his case following his suicide on May 25, 2015.

**SECOND AMENDED COMPLAINT**

23.     Plaintiff is informed and believes that lengthy delays in transporting

VCPTDF detainees to Patton or other locked psychiatric facilities was

commonplace for the several years preceding Mr. Solorzano's suicide and remains

commonplace to this day.

24.     Plaintiff is informed and believes that as of February 9, 2016, there have

been more than twelve detainees at VCPTDF or TRJ who have been found

incompetent to stand trial, been approved for transportation to Patton, but have not

yet been transported.

25.     Plaintiff is informed and believes that at least one inmate currently in

custody at the VCPTDF was civilly committed more than 120 days ago yet

remains in custody at the VCPTDF, and numerous other inmates have been waiting

more than 30 days and plaintiff is informed and believes that wait times of 60 or

more days were commonplace for several years preceding Mr. Solorzano's suicide

and are commonplace now.

26.     Plaintiff is informed and believes that the primary reason for these

unnecessarily lengthy delays is that the California Department of State Hospitals

and/or the Patton facility in particular has adopted a policy which has come to be

known colloquially in Ventura County as "the one in, one out rule."  In essence,

Patton will not take a new Ventura County patient "in" until a Ventura County

**SECOND AMENDED COMPLAINT**

patient currently being treated at Patton has been restored to competency and sent "out" of Patton and back to Ventura County.

27.     Plaintiff is informed and believes that Defendant Sheriff Dean and the individually named CFMG Defendants were well aware of this policy and knew that civilly committed IST detainees faced lengthy delays in being transported to Patton for several years prior to Mr. Solorzano's death and that the delays continue even now.  Nonetheless, Defendants have made no effort to provide adequate treatment to civilly committed IST detainees which has inevitably resulted in the deterioration of the mental health conditions of these detainees.  Although Defendants have had notice of this problem for many years, Defendants failed to take corrective action and Mr. Solorzano's suicide was a clearly foreseeable risk which, unfortunately, materialized.

## CUSTODIAL INCIDENTS

28.     Mr. Solorzano returned to custody at the VCPTDF on October 6, 2014. VCPTDF staff requested that Mr. Solorzano be seen by "psych" staff related to bizarre behavior while on the booking floor.

29.     In a Health Intake Screening Form in VCSO and CFMG medical records dated October 6, 2014, Mr. Solorzano stated: "I feel paranoid. I have not slept in days." The same record reflects, under the suicidality section, that Mr. Solorzano "hung himself" at the Todd Road Jail facility seven years prior.

30.     On March 12, 2015, Mr. Solorzano complained again of having mood swings. "I could cry, then get happy." Mr. Solorzano was to be further evaluated for medications.

31.     On March 16, 2015, Mr. Solorzano again complained of mood swings, being depressed and having anxiety. VCSO and CFMG medical records on this date reflect that Mr. Solorzano had previously attempted suicide. Also on March 16, 2015, Defendant Pollack saw Mr. Solorzano and prescribed Topamax. As of April 4, 2015, Mr. Solorzano was refusing to take Topamax. On April 10, 2015, Topamax was discontinued on the order of Dr. Pollack, but Mr. Solorzano was not reexamined by Dr. Pollack before his medication was discontinued.

32.     Plaintiff is informed and believes that Topamax is approved for use by the Federal Food and Drug Administration ("FDA") only for prevention of seizures and prevention of migraine headaches. The FDA has recognized that Topamax may increase the risk of suicidal thoughts and behavior as well as cause the emergence of, or worsening of, the signs and symptoms of depression, or unusual changes in mood or behavior. There is no evidence that any other medications were prescribed or offered to Mr. Solorzano thereafter.

33.     On April 16, 2015, Mr. Solorzano pressed his emergency buzzer and informed VCSO Deputy Scott Garner that he was hearing voices and saw demons in his cell. When Deputy Garner asked if felt like hurting himself, Mr. Solorzano

SECOND AMENDED COMPLAINT

replied that "he has been thinking about hanging himself in his cell with his sheets but [could] not find anything to attach the sheets to."  Depouty Garner summoned a psych nurse, Defendant Belmontes, to interview Solorzano.  Mr. Solorzano told her that "he has had a plan to hang himself for a while but has been unable to do so."  Mr. Solorzano also told Defendant Belmontes that he wanted to cut himself with an altered razor blade he had in his Bible in his cell.   Defendant Belmontes noted in her progress notes: "Suicidal inmate. I am seeing things, I am getting delusional, I see demons eating my brain.  Its colorful like the rainbow... I need to go to Patton. I was going to kill myself. I tried to hang myself this morning. I have the blade ready to kill myself tonight. It was going to be perfect."  Deputy Garner searched Mr. Solorzano's cell and found the altered razor blade in the toilet bowl. Defendant Belmontes recommended that Mr. Solorzano be placed on Level I safety precautions and he was placed in a safety cell.

34.     The following day, on April 17, 2015, Mr. Solorzano asked to get out of the safety cell, denying suicidal statements or ideation.  Mr. Solorzano told VCSO Deputy James (#4844) and Defendant Belmontes (a.k.a. Rodelander) that he wanted to be reclassified as a "yellow band" or psychiatric inmate.   He also asked Defendant Belmontes, "Can't I be [housed in] medical or yellow band?" Defendant Belmontes told Deputy James that Mr. Solorzano did not meet the criteria for psychiatric classification.  Garner then told Mr. Solorzano that he did not meet the

SECOND AMENDED COMPLAINT

criteria for psychiatric classification ("yellow band") and that he could submit a medical kite to psych staff. He also told Mr. Solorzano that he had no other options than to return him to his housing unit because his request would not be granted.

35.     Defendant Pollack also saw Mr. Solorzano before he was released from the safety cell. Dr. Pollack noted that he suspected that Solorzano was trying to manipulate staff into reclassifying him or moving him. The safety precautions were discontinued and Mr. Solorzano was taken out of the safety cell. Plaintiff is informed, believes and thereupon alleges that this was the second and last time during this stay in custody that Mr. Solorzano saw a staff psychologist or psychiatrist.

36.     On May 14, 2015, Mr. Solorzano again complained of seeing things, but was apparently unable to elaborate. He was then dragged down the hall by multiple deputies, allegedly for being loud and resistive. On May 15, 2015, Mr. Solorzano told Defendant Belmontes: " I am hearing different things. They are not words. Can I be yellow band? I do not want to be around red banders [inmates classified as violent or assaultive]. I change my moods. I stay up all night and then feel weird." Despite this admission of his psychotic state and his express desire to be reclassified as a psychiatric inmate, nothing was done for Mr. Solorzano.

**SECOND AMENDED COMPLAINT**

37.     On May 19, 2015, Mr. Solorzano pressed his call button on two different occasions and told deputies that he was seeing little creatures in his cell. Defendant Belmontes responded to his cell to perform a psychological evaluation. Mr. Solorzano stated, "I see a little creature. Meds make me feel more scattered. I want to go to medical. I like it better there."  Despite this admission of his psychotic state and his express desire to be housed in the medical section of the VCPTDF where he expected to receive treatment for his condition, nothing was done for Mr. Solorzano.  Defendant Belmontes stated that "she did not believe any further action would be necessary."  "Nurse Belmontes said she believed Solorzano was trying to manipulate staff with his behavior."  VCSO Deputy Delpit and her supervisor nonetheless decided to place Mr. Solorzano in a safety cell as a custody admit.

38.     On May 25, 2015, Edgar Solorzano hanged himself in the Ventura County Jail at approximately 4:30 a.m., using a bed sheet.  He had torn his bed sheets to fashion a makeshift rope.  He had also used a blade to cut his wrist.  He had fulfilled his suicidal desires according to exactly the same plan that he had expressed to Deputy Garner and Defendant Belmontes on April 16, 2015.

39.     On May 26, 2015, the Ventura County Medical Examiner's Office performed an autopsy and determined that the cause of death of Mr. Solorzano was asphyxia by hanging and that the manner of death was suicide.

**SECOND AMENDED COMPLAINT**

40.     The autopsy revealed twenty superficial wounds on his inner left wrist, which were recent, but healing a little.  These types of wounds are common expressing suicidal ideation and are commonly known as "hesitation marks."

41.     Plaintiff is informed, believes and thereupon alleges that in addition to being aware of the lengthy delays faced by civilly committed ISTs, Sheriff Dean has been regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates, jail suicides and other violations involving the housing, care, mental health care, and treatment of inmates at VCPTDF.  On May 31, 2011, the Ventura County Grand Jury Issued a Final Report entitled "Inmate Processing and Suicide Prevention in the Ventura County Jail."  The Grand Jury noted that suicide was the leading cause of in-custody deaths in local jails between 2000 and 2007.  The Grand Jury noted that "[o]ther than the Sheriff, there is no one individual formally responsible for suicide prevention in the County Jail," which remains true to this day.  The Grand Jury made numerous recommendations and Plaintiff is informed and believes that Sheriff Dean has failed to implement many of the Grand Jury's recommendations despite being specifically alerted to the gravity of the risk of suicide for inmates in his custody.

42.     Sheriff Dean is sued in his individual capacity and in his official capacity as a supervisor for his own culpable action or inaction in the training, supervision

or control of his subordinates, or his acquiescence in the constitutional deprivations that showed reckless or callous indifference for others. Sheriff Dean's affirmative conduct involves: (1) his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew, or reasonably should have known, would cause others to inflict a constitutional injury on Mr. Solorzano; and (2) allowing the policy of placing inmates with severe mental illness in solitary confinement for weeks on end, thereby significantly exacerbating the isolated inmate's psychosis.

43.     Mr. Solorzano was a pre-trial detainee from October 6, 2014 through March 24, 2015.  He was then civilly committed pursuant to *Penal Code* section 1368 on March 25, 2015.  From the time that he was booked until the time he hanged himself, he was suffering from a serious, but treatable mental illness. Upon booking at VCPTDF and thereafter, custodial staff and personnel knew, or should have known: (1) that Mr. Solorzano had a serious but treatable mental and medical illness; and (2) that decedent's mental health was deteriorating and that decedent needed immediate medical and psychiatric care and/or a higher level of medical and psychiatric care, but failed to provide it. VCPTDF custodial and medical staff ignored and/or disregarded their duties and responsibilities for decedent's urgent medical needs.

SECOND AMENDED COMPLAINT

44.    Despite Mr. Solorzano's prior suicide attempt while in VCPTDF, his request for psychiatric care, his request to be rehoused in the medical section, his statement that he had a plan to commit suicide by hanging himself with a bed sheet and cutting himself with a blade, his obviously deteriorating psychiatric condition, and the discontinuation of his medications, defendants did nothing.  By placing Mr. Solorzano in isolation and continuously disciplining him, among other things, defendants contributed to and exacerbated Mr. Solorzano's mental and medical condition.

45.    In sum, Defendants failed to properly classify, house, monitor or provide reasonable security for Mr. Solorzano and restricted his visits.  Defendants failed to provide Mr. Solorzano medical and psychiatric care for his suicidal and psychiatric disabilities, and failed to refer decedent to a specialist, psychologist, psychiatrist or anyone who could provide appropriate treatment for his condition. After Mr. Solorzano was civilly committed as incompetent to stand trial, Defendants failed to provide him with adequate treatment and failed to transfer Mr. Solorzano to Patton State Hospital or to any other public or private treatment facility within a reasonable amount of time and also did not make efforts to place him on outpatient status as specified in Penal Code §1600 after a reasonable amount of time without treatment had elapsed.

///

**SECOND AMENDED COMPLAINT**

## FIRST CLAIM FOR RELIEF

### Violation of Civil Rights: Deliberate Indifference to Serious Medical Needs

### (42 U.S.C. § 1983/14th Amendment)

### Plaintiff Against Paul Adler, Ronald Pollack, Diane Belmontes and

### Does 1 through 10

46.     The preceding Paragraphs are incorporated by reference as though fully set forth herein.

47.     The Fourteenth Amendment's deliberate indifference to an inmate's serious medical need standard is a constitutionally required minimum standard which applies to all pre-trial detainees in custody and applied to Mr. Solorzano throughout his incarceration from October 6, 2015 through May 25, 2015.  This standard imposes duties on custodial and law enforcement officials to provide humane conditions of confinement to Mr. Solorzano; to ensure that he receive adequate food, clothing, shelter, and medical care; and to take reasonable measures to guarantee his safety.  A serious medical need is present whenever the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Mr. Solorzano's mental health condition and suicidal ideation were not adequately treated and Defendants were deliberately indifferent to his serious medical need throughout his incarceration.

48.     Defendants, acting under color of state law, deprived Mr. Solorzano of the rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution by subjecting him, or through their deliberate indifference allowing others to subject him to delay and denial of access to medical and mental health care for a serious but treatable medical and mental health condition.

49.     These named defendants knew, or must have known that: (1) Mr. Solorzano's mental health condition was serious but treatable; (2) Mr. Solorzano had previously attempted suicide while at VCPTDF; (3) there was a Court Order finding Mr. Solorzano incompetent to stand trial and ordering that he be transferred to Patton State Hospital; (4) placing Mr. Solorzano in isolation would exacerbate Mr. Solorzano's psychotic condition; (5) Mr. Solorzano was only seen by a psychologist or psychiatrist while incarcerated at VCPTDF on two brief occasions and, instead, was only "treated" by nurses or psych nurses; (6) Mr. Solorzano received medication for his condition for less than two weeks before he began refusing it and it was discontinued; (7) the drug prescribed, Topamax, was not an adequate medication to treat Mr. Solorzano and in fact may have worsened his mental illness and increased the risk that he would attempt suicide; (8) no other medications were prescribed or offered to Mr. Solorzano thereafter despite a court's finding that Mr. Solorzano consented to the administration of psychotropic

SECOND AMENDED COMPLAINT

medication on April 29, 2015; (9) Mr. Solorzano had a plan to commit suicide on April 16, 2015 while in custody using an altered razor blade and he was frustrated because he could not find a place in his cell to hang himself from; (10) Mr. Solorzano had threatened to hang himself with bed sheets and cut himself with a razor and that a modified razor with the plastic removed was found in his cell on that day; and (11) placing Mr. Solorzano in a cell by himself with cloth sheets and lacking suicide precautions would enable Mr. Solorzano to commit suicide.

50.     As a direct and proximate result of these named defendants' acts and/or omissions plaintiff, sustained the following injuries: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and burial expenses; (3) loss of support, familial relationships, love, companionship, comfort, affection, consortium, society, services, solace and moral support; (4) emotional distress; and (5) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

51.     As a further direct and proximate result of these named defendants' acts and/or omissions, plaintiff sustained the following injuries and damages: (1) hospital, medical and burial expenses; (2) Edgar Solorzano's loss of life; and (3) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

**SECOND AMENDED COMPLAINT**

21

52.     The conduct of Defendants Pollack and Belmontes was despicable, fraudulent, malicious, oppressive and in reckless and/ or conscious disregard of the rights of decedent, entitling plaintiff to punitive and exemplary damages in an amount sufficient to punish said defendants and to deter similar wrongdoing by others.

## SECOND CLAIM FOR RELIEF

**Violation of Civil Rights: Substantive Due Process Right of Incapacitated Criminal Defendant to Restorative Treatment.**

**(42 U.S.C. § 1983/14th Amendment)**

**Plaintiff Against Paul Adler, Ronald Pollack, Diane Belmontes and Does 1 through 10**

53.     The preceding Paragraphs are incorporated by reference as though fully set forth herein.

54.     Edgar Solorzano was a pre-trial detainee in the VCPTDF from October 6, 2014 through March 25, 2015.  During this period of time, the Fourteenth Amendment deliberate indifference to an inmate's serious medical need standard applied.

55.     From March 25, 2015 until he hanged himself in his cell on May 25, 2015, Mr. Solorzano was civilly committed after being found incompetent to stand trial pursuant to *Penal Code* section 1368.  During this period of time, a more humane

Fourteenth Amendment Substantive Due Process Standard applied. The

substantive due process rights of incapacitated criminal defendants is determined

by balancing their liberty interests in freedom from incarceration and in restorative

treatment against the legitimate interests of the state.  The state had no legitimate

interest in prolonging Mr. Solorzano's incarceration for two months without

providing him with restorative treatment because, as both the U.S. Supreme Court

and Ninth Circuit have observed, "continued commitment must be justified by the

goal of restoration of competency so that the detainee is able to stand trial."

*Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

56.     Decedent, Edgar Solorzano (like many other inmates who were and

currently are civilly committed after being found IST), suffered an extended period

of incarceration in the VCPTDF awaiting court-ordered competency evaluation

and restoration services in violation his right to be free from incarceration absent

conviction and to timely restorative treatment.  Shortly after being found IST, Mr.

Solorzano refused the only medication that he was being given for his condition.

Thereafter, he was not prescribed, offered or given any other medication despite a

court's finding more than three weeks before his suicide that he consented to the

administration of psychotropic medication.  Furthermore, after he was found IST,

he did not receive any restorative treatment, was disciplined several times, held in

SECOND AMENDED COMPLAINT

23

isolation and denied visits which exacerbated his deteriorating mental health condition and increased the risk that he would commit suicide.

57.     Defendants, acting under color of state law, deprived Mr. Solorzano of the rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution by violating his right to be free from incarceration absent conviction and to timely restorative treatment.

58.     Defendants knew or should have known the eleven facts set forth in ¶ 49, *infra.*

59.     Defendants failed to provide Mr. Solorzano medical and psychiatric care for his suicidal and psychiatric disabilities, and failed to refer decedent to a specialist, psychologist, psychiatrist or anyone who could provide appropriate treatment for his condition. After Mr. Solorzano was civilly committed as incompetent to stand trial, Defendants failed to transfer Mr. Solorzano to Patton State Hospital or to any other public or private treatment facility within a reasonable amount of time and did not make efforts to place him on outpatient status as specified in Penal Code §1600 within a reasonable amount of time without treatment had elapsed.  Mr. Solorzano hanged himself 61 days after he was civilly committed.

60.     As a direct and proximate result of these named defendants' acts and/or omissions plaintiff, individually, sustained the following injuries, including but not limited to: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and burial

**SECOND AMENDED COMPLAINT**

24

expenses; (3) loss of support, familial relationships, love, companionship, comfort, affection, consortium, society, services, solace and moral support; (4) emotional distress; and (5) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

61.    As a further direct and proximate result of these named defendants' acts and/or omissions, plaintiff sustained the following injuries and damages, including but not limited to: (1) hospital, medical and burial expenses; (2) Edgar Solorzano's loss of life; and (3) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

62.    The conduct of Defendants Pollack and Belmontes was despicable, fraudulent, malicious, oppressive and in reckless and/ or conscious disregard of the rights of decedent, entitling plaintiff to punitive and exemplary damages in an amount sufficient to punish said defendants and to deter similar wrongdoing by others.

///

///

///

///

### THIRD CLAIM FOR RELIEF

**Municipal Liability on Decedent's 42 U.S.C. § 1983 Claims**

**(Deliberate Indifference Causing Constitutional Violations and**

**Substantive Due Process Right of an Incapacitated Criminal**

**Defendant to Restorative Treatment)**

**Plaintiff Against Defendants County of Ventura, Sheriff Dean and Does 1-10.**

63.    The preceding Paragraphs are incorporated by reference as though fully set forth herein.

64.    Plaintiff is informed, believes and thereupon alleges that, at all times herein mentioned, defendant Ventura County, with deliberate indifference and conscious and reckless disregard for the safety, security and constitutional and statutory rights of Mr. Solorzano, engaged in the unconstitutional conduct and omissions as set forth hereinbefore. Ventura County authorized or ratified the wrongful acts of the individual defendants herein. The individual defendants' wrongful conduct was the result of policies, practices and customs to subject inmates of VCPTDF to unconstitutionally inadequate treatment for inmates' mental health conditions and permitted and promoted unsafe conditions for inmates leading to a heightened risk of suicide, as set forth in ¶¶ 23-27 and 41.  The actions and inactions of VCSO and its medical and custody staff were known, or should have been known, to the policy makers of Ventura County.

65.   The customs, policies, practices and/or procedures of VCSO, which were directed, encouraged, allowed and/ or ratified by policy making Deputies for Ventura County, include, but are not limited to: (1) to deny inmates at VCSO medical and psychiatric care and treatment; (2) to deny inmates at VCSO their substantive due process rights; (3) to fail to properly classify, house and/or monitor inmates at VCSO suffering from a mental health disability; (4) to fail to provide mental health care for inmates with serious mental health issues; (5) to fail to use appropriate and generally accepted jail procedures for handling suicidal, mentally ill and/or emotionally disturbed inmates; (6) to fail to institute or require and enforce proper and adequate training, supervision, policies and procedures concerning the handling of mentally ill and/or emotionally disturbed inmates at VCPTDF; and (7) to allow, tolerate, and/or encourage a "code of silence" among law enforcement Deputies and sheriff department personnel.

66.   As a direct and proximate result of these named defendants' acts and/or omissions, plaintiff, individually, sustained the following injuries, including but not limited to: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and burial expenses; (3) loss of support, familial relationships, love, companionship, comfort, affection, consortium, society, services, solace and moral support; (4) emotional distress; and (5) all damages and penalties available pursuant to 42

U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

67.    As a further direct and proximate result of these named defendants' acts and/or omissions, plaintiff sustained the following injuries and damages, including but not limited to: (1) hospital, medical and burial expenses; (2) Edgar Solorzano's loss of life; and (3) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

### FOURTH CLAIM FOR RELIEF

**Municipal Liability on DECEDENT'S 42 U.S.C. § 1983 Claims**

**(Failure to Screen, Train, Supervise and Reprimand**

**Causing Constitutional Violations) (Survival Claim)**

**Plaintiff Against Defendant Sheriff Dean and Does 1 through 10)**

68.    The preceding Paragraphs are incorporated by reference as though fully set forth herein.

69.    These named defendants acted under color of law, the acts of these defendants' subordinates deprived Mr. Solorzano of his state and federal rights as alleged herein, and these named defendants directed their subordinates in the acts that deprived Mr. Solorzano of his rights. These defendants set in motion a series of acts by their subordinates that they knew, or should have known, would cause

these subordinates to deprive Mr. Solorzano of his state and federal rights; these named defendants knew, or reasonably should have known, that their subordinates were engaging in these acts and omissions; and these named defendants failed to act to prevent their subordinates from engaging in such conduct.

70.     Sheriff Dean and Does 1 through 10: (1) failed to properly train, assign, supervise and guide their staff and medical personnel assigned to VCPTDF; (2) failed to take immediate measures to transfer decedent to Patton State Hospital pursuant to court order or arrange for appropriate mental health treatment after he was found to be incompetent to stand trial; (3) either participated in, knew of, or must have known of, their subordinates' deliberate indifference in failing to properly classify, house and monitor inmates suffering from mental health disabilities; (4) knew of the denial of access to mental and health care and treatment to inmate patients, causing injury or death; (5) failed to supervise the services for pretrial detainee inmates; (6) failed to staff the facility with adequate and appropriate personnel and failed to provide adequate leadership and supervision for the staff that he had; (7) failed to provide care or access to medical or mental health for inmate patients with serious but treatable medical and mental conditions; and (8) operated with inadequate safeguards, audits, or reporting requirements reviewable by supervisors.  A supervisor may be individually liable if there exists a sufficient causal connection between the supervisor's wrongful

conduct and the constitutional violation. Supervisory liability exists even without overt personal participation in the offensive act, if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

71.    As a direct and proximate result of these named defendants' acts and/or omissions, plaintiff, individually, sustained the following injuries, including but not limited to: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and burial expenses; (3) loss of support, familial relationships, love, companionship, comfort, affection, consortium, society, services, solace and moral support; (4) emotional distress; and (5) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

72.    As a further direct and proximate result of these named defendants acts and/or omissions, plaintiff sustained the following injuries and damages, including but not limited to: (1) hospital, medical and burial expenses; (2) Edgar Solorzano's loss of life; and (3) all damages and penalties available pursuant to 42 U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

///

///

**SECOND AMENDED COMPLAINT**

## FIFTH CLAIM FOR RELIEF

### Wrongful Death

### California Code of Civil Procedure §§ 377.60 and 377.61(Individual Claim)

### Plaintiff Against All Defendants

73.     The preceding Paragraphs are incorporated by reference as though fully set forth herein.

74.     *Cal. Code of Civil Procedure* § 377.60 establishes a separate statutory cause of action in favor of specified heirs of a person who dies as a result of the "wrongful act or neglect" of another. The specified heirs are entitled to recover damages on their own behalf for the loss they have sustained by reason of the victim's death. *Corder v. Corder*, 41 Cal.4th 644, 651 (2007); *Fitch v. Select Products Co.*, 36 Cal.4th 812, 819 (2005). A wrongful death claim is separate and distinct from the victim's action which "survives" to the estate pursuant to *C.C.P.* § 377.20. Therefore, plaintiff is proceeding on her own wrongful death claim as well as the survival action in her capacity as the successor-in-interest to the estate of Edgar Solorzano.

75.     Plaintiff Raya is statutorily entitled and has standing to proceed pursuant to *C.C.P.* § 377.60(a). Plaintiff Raya is the natural mother of decedent Solorzano, who was not married, had no domestic partner and had no issue. *Chavez v. Carpenter*, 91 Cal.App.4th 1433, 1440 (2001). Further, plaintiff Raya was

SECOND AMENDED COMPLAINT

dependent upon the victim to a degree at the time of his death. *C.C.P.* §377.60(b).

Mr. Solorzano resided with plaintiff at the time of his death and contributed to

plaintiff's necessaries of life.

76.     Defendants, and each of them, acted negligently, with gross negligence,

intentionally, wantonly and with culpable and callous disregard for the rights and

life of Mr. Solorzano. Plaintiff specifically incorporates herein by reference each

paragraph contained in every other claim for relief set forth herein.

77.     As a direct and proximate result of these named defendants' acts and/or

omissions, plaintiff, individually, sustained the following injuries, including but

not limited to: (1) wrongful death of Edgar Solorzano; (2) hospital, medical and

burial expenses; (3) loss of support, familial relationships, love, companionship,

comfort, affection, consortium, society, services, solace and moral support; (4)

emotional distress; and (5) all damages and penalties available pursuant to 42

U.S.C. §§1983 and 1988 and as otherwise allowed under California and federal

statutes, codes and common law.

78.     As a further direct and proximate result of these named defendants acts

and/or omissions, plaintiff sustained the following injuries and damages, including

but not limited to: (1) hospital, medical and burial expenses; (2) Edgar Solorzano's

loss of life; and (3) all damages and penalties available pursuant to 42 U.S.C.

**SECOND AMENDED COMPLAINT**

32

§§1983 and 1988 and as otherwise allowed under California and federal statutes, codes and common law.

79.     The conduct of said defendants was despicable, fraudulent, malicious, oppressive and in reckless and/ or conscious disregard of the rights of decedent, entitling plaintiff to punitive and exemplary damages in an amount sufficient to punish said defendants and to deter similar wrongdoing by others.

## SIXTH CLAIM FOR RELIEF

**Violation of Americans with Disabilities Act (ADA), Title II, 42 U.S.C. §12101 *et seq.*, Rehabilitation Act, 29 U.S.C. §794, and California Unruh Act, Cal. Civil Code §51 *et seq.*,**

**Plaintiff Against the County of Ventura**

80.     The preceding Paragraphs are incorporated by reference as though fully set forth herein.

81.     Congress enacted the ADA upon a finding, amongst other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

82.     Edgar Solorzano was a "qualified individual" with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act

**SECOND AMENDED COMPLAINT**

(ADA), 42 U.S.C. §12131(2), under §504 under Rehabilitation Act of 1973 (RH), 29 U.S.C. §794 and *California Civil Code* § 51, *et seq.* Mr. Solorzano qualified as an individual with a disability and he met the essential eligibility requirements of Ventura County and  VCSO's programs to provide mental/medical health services for its inmate patients at VCPTDF.

83.    Defendant Ventura County, VCSO and VCPTDF are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131(2), §504 of the Rehabilitation Act of 1973, and *California Civil Code* § 51, *et seq.*

84.    Defendant Ventura County "engaged in the business of... health care" and provided custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. §794(b).

85.    Under the ADA, Ventura County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities..." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

86.    Ventura County is mandated under the ADA to not discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the

**SECOND AMENDED COMPLAINT**

34

goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182(a).

87.    Defendant Ventura County receives federal financial assistance for their jails and therefore must comply with the mandates of the Rehabilitation Act, which specifies that "program or activity" means all of the operations of a department, agency, special purpose district, or other instrumentality of a state or local government.

88.    Defendant Ventura County, and other defendants, violated the ADA, RA and *Cal. Civ. Code* §51, *et seq.* and deprived Mr. Solorzano of his federal and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with VCPTDF; (b) failing to provide services or accommodate Mr. Solorzano with access to the programs and services of Ventura County within VCPTDF for persons who qualify for services under California and federal law; (c) failing to provide services or accommodate Mr. Solorzano with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled; (d) failing to provide reasonable accommodations to people in custody with mental disabilities in their jail and, instead, providing quality of care and service that is different, separate and that is worse than the service provided to other individuals with the same disability; and (e) failing to properly train its

SECOND AMENDED COMPLAINT

deputies, medical and mental health staff, employees and Deputies on how to peacefully respond, treat and interact with disabled persons such as Mr. Solorzano.

89.    Mr. Solorzano was denied the services, programs and activities of Ventura County which deprived him of mental health and medical health programs and services which would have provided the delivery of treatment, follow-up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs and to protect himself from self- harm. Defendants failure to properly train their employees and the denial of mental and medical health care treatment, follow- up, training and supervision resulted in the violation of Mr. Solorzano's constitutional rights.

///

///

////

///

///

///

///

///

**SECOND AMENDED COMPLAINT**

## SEVENTH CLAIM FOR RELIEF

*California Government Code § 845.6 (Failure To Summon Medical Care)*

**Plaintiff Against County of Ventura, CFMG, Paul Adler, Ronald Pollack,**

**Diane Belmontes and Does 1 through 10**

90.    The preceding Paragraphs are incorporated by reference as though fully set forth herein.

91.    *California Government Code* § 815.6 makes a public entity liable for its failure to discharge a mandatory duty imposed by an enactment designed to protect against the risk of a particular kind of injury.

92.    Government Code § 845.6 provides in pertinent part: "[A] public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

93.    Doe defendants 1 through 7 are VCSO and/or VCPTDF staff and employees who knew, or had reason to know: (1) that Mr. Solorzano was in need of immediate and/or a higher level of medical and psychiatric care, treatment, observation and monitoring; (2) that he required special housing and security for his safety and well being; (3) that Mr. Solorzano should not have housed in isolation.

94.     Each of these named defendants failed to take reasonable action to: (1) summon and/or to provide Mr. Solorzano access to medical and psychiatric care and treatment; and (2) provide Mr. Solorzano monitoring and housing accommodations as indicated under the circumstances. These named defendants failed to take reasonable action to provide Mr. Solorzano access to such care, treatment, monitoring and housing as his circumstances required, all in violation of *California Government Code* §845.6.

95.     As a legal and proximate cause of the aforementioned acts of these named defendants, Mr. Solorzano committed suicide. Plaintiff was injured as set forth herein and her losses entitle her to damages, in an amount according to proof, according to California law.

## EIGHTH CLAIM FOR RELIEF

### Negligence and Failure to Discharge Mandatory Duty –

### *California Government Code* § 815.6

### Plaintiff Against County of Ventura, Taylor Fithian, Paul Adler,

### Diane Belmontes and Does 1 through 10

96.     The preceding Paragraphs are incorporated by reference as though fully set forth herein.

97.     *Cal. Civ. Code* § 1714(a) provides that: "Everyone is responsible, not only for the result of his willful acts, but also for the injury occasioned to another by his

SECOND AMENDED COMPLAINT

want of ordinary care or skill in the management of his property or person..."
Defendants had a duty to: (1) render access and delivery of mental and medical care, treatment and/or emergency services to Mr. Solorzano for his mental health condition; and (2) provide reasonable security, housing and monitoring of Mr. Solorzano as he was in their care, custody and control and under their sole and exclusive medical care and treatment.

98.    *Cal. Gov't Code* § 815.6 makes a public entity liable for its failure to discharge a mandatory duty imposed by an enactment designed to protect against the risk of a particular kind of injury.

99.    Negligence consists of acts or omissions which are not compatible with the standard of care exercised by a reasonable man of ordinary prudence.  Defendants breached their duties by failing to properly house, monitor, care for, provide appropriate medical care and treatment and to ensure Mr. Solorzano did not engage in self-harm.

100.   As a direct and proximate result of the negligence of defendants, whose acts were a substantial factor in bringing about the suicide of Mr. Solorzano, plaintiff has suffered, and will continue to suffer, loss of comfort, society and companionship, together with the monetary and financial assistant decedent may have provided. As a further legal and proximate result, plaintiff, in her individual and representative capacities, has been damaged in an amount according to proof.

**SECOND AMENDED COMPLAINT**

39

## NINTH CLAIM FOR RELIEF

### Negligence

**Plaintiff Against Defendant CFMG, Paul Adler, Taylor Fithian, Ronald Pollack, Diane Belmontes and Does 1 through 10**

101.   The preceding Paragraphs are incorporated by reference as though fully set forth herein.

102.   *Cal. Civ. Code* § 1714(a) provides that: "Everyone is responsible, not only for the result of his willful acts, but also for the injury occasioned to another by his want of ordinary care or skill in the management of his property or person..." Defendants had a duty to: (1) render access and delivery of mental and medical care, treatment and/or emergency services to Mr. Solorzano for his mental health condition; and (2) provide reasonable security, housing and monitoring of Mr. Solorzano as he was in their care, custody and control and under their sole and exclusive medical care and treatment.

103.   Negligence consists of acts or omissions which are not compatible with the standard of care exercised by a reasonable man of ordinary prudence.  Defendants breached their duties by failing to properly house, monitor, care for, provide appropriate medical care and treatment and to ensure Mr. Solorzano did not engage in self-harm.

104.   During the time that defendants provided medical and mental care to decedent Edgar Solorzano, they held themselves out to be members of the medical profession and/or nurses, technicians or other medical personnel, in that they were to provide health care, services and treatment within the standard of care.

105.   These named defendants, and each of them, negligently rendered medical services, failed to render medical services and failed to conform to the standard of care required of them in rendering care to, or in rendering professional services to, decedent Edgar Solorzano including, but not limited to the minimal requirements set forth in Title 15 of the California Code of Regulations, numerous rights set forth in *Cal Welfare & Inst. Code* section 5325.1, the National Commission on Correctional Health Care "Standards for Mental Health Services in Correctional Facilities" and "Standards for Health Services in Jails."  As a result of such negligence, Mr. Solorzano committed suicide.

106.   As a direct and proximate result of the aforementioned conduct of these named defendants, and each of them, plaintiff has suffered, and will continue to suffer, loss of comfort, society and companionship, together with the monetary and financial assistance decedent would have provided.

107.   As a further direct and proximate result of the aforementioned conduct of these named defendants, and each of them, plaintiff was compelled to, and did, incur burial and other pecuniary damages in an amount according to proof.

**SECOND AMENDED COMPLAINT**

41

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**On the Survivor Claims:**

1.      Compensatory, general and special damages against each Defendant, jointly and severally, according to proof;

2.      Exemplary and punitive damages against Defendants CFMG and the other individual defendants and DOES;

**On Plaintiff's Individual Claims:**

3.      For pecuniary losses caused by DECEDENT'S death, including but not limited to pecuniary support DECEDENT would have provided, and non-economic damages for being deprived of the DECEDENT'S society and comfort;

**On All Claims:**

4.      For declaratory and injunctive relief preventing similar future harm;

5.      For attorney's fees and costs under 42 U.S.C. § 1988, *C.C.P.* § 1021.5, or under any other applicable statutes or law;

6.      For an award of any applicable statutory penalties;

7.      For an award of any applicable interest amounts; and

///

///

**SECOND AMENDED COMPLAINT**

8.     For any other relief the Court deems appropriate.


DATED: February 18, 2016          By:_____ /s/
                                       Brian A. Osborne
                                       Attorney for Plaintiff

DATED: February 18, 2016          By:_____ /s/
                                       Brian A. Vogel
                                       Attorney for Plaintiff


## PLAINTIFF DEMANDS A JURY TRIAL


DATED: February 18, 2016          By:_____ /s/
                                       Brian A. Osborne
                                       Attorney for Plaintiff

DATED: February 18, 2016          By:_____ /s/
                                       Brian A. Vogel
                                       Attorney for Plaintiff

SECOND AMENDED COMPLAINT